And Mr. McSweeney, whenever you're ready, we'll hear from you. Good morning, and may it please the Court. My name is Patrick McSweeney, and I represent all of the appellants. I have to apologize to the Court. I just noticed this week, in re-reading the briefs, that the printer did not include the text of the statute. If it pleases the Court, I can hand copies of the full statute to the clerk to hand up to you, unless you already have a copy of the statute. I think we're fine. It's the same statute that's published, isn't it? Yes, it is, Your Honor. All right, thank you. Your Honor, there are two claims in this case. Now, I first have to explain why I included two claims, but both are bottomed on the same theory, the theory of discrimination. The first claim was predicated on the First and Fourteenth Amendment, the associational rights of the party and the candidates in this case. And the second was the garden variety equal protection case. The district court concluded that there was no associational right, no First Amendment right involved in this case. If that is the situation, the equal protection claim still survives. This very point was addressed by the Sixth Circuit in the Obama for America v. Houston case. The court said, if a plaintiff alleges only that a state treated him or her differently than similarly situated voters, without a corresponding burden on the fundamental right to vote, a straightforward, rational basis standard of review should be used. Under either, in both of those claims, both the First Amendment claim and the equal protection claim, we maintain that the same standard of review applies, because the First Amendment, according to Anderson and Burdick, incorporates the traditional equal protection analysis. If I have time, I want to address why I think the argument that all election law cases are governed by the Anderson-Burdick test is a misapplication of what the court has done. It's a much broader statement than the cases would justify. That case, Anderson in particular, has only been applied where there's a fundamental right, only in ballot access cases and cases involving voting rights and cases involving direct challenge by voters. It has not been applied to a case such as this. But regardless, because Anderson- Sorry, now I'm totally mixed up. I thought it was the district court said Anderson-Burdick didn't apply in this case. You also think Anderson-Burdick shouldn't apply in this case? No, no. I think- I'm getting my mixed up. That does not apply to the second count. The second count. Yes. Your standalone equal protection claim. Sorry, sorry, sorry. But I think it's still the same test regardless, because Anderson specifically incorporated those cases involving the analysis of equal protection. We've come down to a rational basis test. That's exactly- The question is, did Virginia have a rational basis for permitting the identification of persons on the ballot at the top of the ticket and not at the bottom? That's correct, Your Honor. Why don't you address that? That's the whole case. That's the whole case, Your Honor. That's exactly right, Your Honor. We've relied on two cases in particular. The Illinois State Board of Elections case, which concluded that differentiation between statewide and local candidates was not justified. And a case that arose in this circuit, in the district court of North Carolina Eastern District, the New Alliance Party case, which we've cited in the brief, which concluded that a distinction between state and local candidates is not justified. It depends what the justification the state advances. Don't you have to take- they've advanced three bases, and I think you ought to address those three and see why they're not rational. I am, Your Honor. Okay. There were three. The first was that the state has an interest in expanding the pool of potential candidates. The Hatch Act bars federal employees from participating in any election that is partisan, and it's a defined term. A partisan election is any election in which any candidate has been nominated by a party. We wouldn't be here because this applies- the prohibition in the statute applies only to party-nominated candidates. It's not just all local candidates. It's party-nominated candidates. So in any case in which there is a candidate anywhere on the ballot who's been nominated by a political party, it is a partisan election and federal employees are barred. Eliminating this prohibition does not change the Hatch Act. And finally, the Commonwealth concluded and conceded that the Hatch Act is not modified by eliminating- would not be modified by eliminating the prohibition. What they argue now is that this would incline people who otherwise would not run on a party label or with a party nomination to do so. Well, that is counter to their argument that eliminating the prohibition would shrink the pool of available candidates. In fact, it expands the pool, or at least it expands the pool of those who want to run on a party label, and it has nothing to do with shrinking any pool of candidates. The second argument was that this somehow improves impartial governance, or it contributes to impartial governance. There's nothing that this prohibition does that affects service of a party-nominated candidate once elected, once he's in office or she is in office. It has no bearing on what happens after the election. It's still a partisan candidate, even if it's not on the ballot. So eliminating the prohibition or striking the prohibition would not affect- the interest would not contribute. Well, I thought they were focusing on the nature of local politics that often wasn't even partisan. I mean, the local dog catcher, it doesn't matter whether he's a Republican or Democrat, it depends whether he can catch dogs. And we want to get people who are interested in having that job petitioned to get on the ballot. And there are a lot of very functional type of local jobs that are sort of at the ground roots of order in these towns and villages and counties that would not serve well. And they want to have a broader base and not have pre-qualifications for national elections and so forth. That lets anybody who wants to get on there to get on there. And a lot of them won't identify with the party. Some might identify with the party but not have been nominated by a party. There would be confusion. Somebody says, I'm a Republican and I petitioned to get on. And the state would say, hold it, you weren't nominated by the Republican Party of Virginia at a convention. And therefore, you can't put Republican there. Nor if you could put Republican there, the public wouldn't know whether that person just identifies or was actually nominated. I think they have a lot of- and they go historically into this. And it doesn't seem like they're targeting any kind of malicious conduct. They're basically trying to make this a grassroots democratic process by leaving open that identification aspect. Your Honor. I mean, there's a difference between that and the convention process where a party, a major party who qualifies under the definitions under the statute is nominated and who does get identification under the statute. And so I just wonder whether putting those two together in the same pot isn't mixing oil and water. I guess you can get an emulsion of some kind and point, but that's really a state decision, isn't it? Your Honor, we come down to well-identified candidates, not dog catchers. We have five constitutional officers. Well, I'm talking about the class to which this applies. That's what I'm talking about. What was that, the environmental police officer, so to speak? No, that's not the case. That's not the case. The pool we're talking about includes local governing bodies, members of local governing bodies, and five constitutional offices. City council, the members who meet once a week over the firehouse and that type of thing. Well, I pointed out that in a county of more than a million people with billions of dollars in its budget, the governing body of Fairfax County, for example, exercises more discretion over more money than state senators and certainly delegates. Their roles, their legislative roles are not distinguishable. The state has not attempted to eliminate these positions as partisan positions. And the Supreme Court has said if they can be nominated, why would that not be information that the voters should have? In fact, in Anderson and in several other Supreme Court cases, the Court has said it makes no sense to deny voters relevant information. The fact that they were nominated. Well, not on the ballot. Right, not on the ballot. Pardon? Not on the ballot. The function is not to provide information. It's to list the people who are being, to identify them for purposes of collecting the vote. And, I mean, this comes out of Tim's and Washington Grange. And so that's a different argument. It seems to me the argument you have to make is whether Virginia rationally distinguished between people nominated at a formal convention by a party or by primary something and the local candidates for these wide range of offices that include all kinds of skills. Your Honor, the wide range is limited only to those who are elected. And that's the five constitutional officers and the members of governing bodies. It does not address. It doesn't relate to those elected. The issue is whether they can get on the ballot to be elected. The question is who can get on the ballot and what can they put on there. Can they put on their age? Can they put on their color? Can they put on their affiliations, what church they go to? I mean, this is a. . . They get on the ballot if they're party nominated by that fact alone. That's how they get on the ballot as opposed to front petitions. That's how they get on the ballot. It doesn't, you have not addressed the distinction that, or the failure. . . Can't they petition on? Pardon? Can't they petition on? They can't as independents. The question is whether it's an appropriate discrimination. The justification offered by the three justifications are not served. The three interests are not served in this case. We're just talking about rational basis review, right? This is why I'm having trouble. It seems like, I mean, you can argue all day about whether it's really necessary to do this, whether the state should have gone further. But if all you're asking is there's some rational reason why the state might treat local elections differently from state and federal elections. I mean, as a group, right, local officials do exercise less discretion. They do less policymaking. Some of them are in quasi-judicial or judicial functions. Those positions. . . Not in Virginia. Not in Virginia. There are no local. . . I've cited the cases under Virginia law. They're not judicial or quasi-judicial. They're all. . . All of these officials are administrative or legislative or both. Okay. Are you saying it doesn't cover a clerk of court, sheriff, commonwealth attorney? Yes. It does? It does. It does cover. Those five are locally elected, and they are considered under Virginia law. The Supreme Court has said they are administrative positions. Okay. I don't care what they are under Virginia law. I'm sort of saying as a matter of common sense, rational basis inquiry, you can see why a state might want to treat positions like that differently. Well, that's why I also included an argument that this is over-inclusive if it includes the governing bodies, which do exercise legislative. . . Is the over-inclusiveness component to rational basis review? Government doesn't have to tailor it narrowly. That would all make sense if we were doing some kind of heightened scrutiny here, but what's the justification for looking at a regulation like this and saying we ought to come to this skeptically and apply some really careful scrutiny to this, make sure it's narrowly tailored? Well, because Timmons itself said the right of a party to identify with its candidates on the ballot and the right of a candidate to have his party identified is a non-severe but not a trivial burden on the First Amendment right of association. That's why it's important to analyze. . . It's not an equal protection analysis. That's the Anderson verdict analysis. That's exactly right. Well, I thought we were talking about the equal protection as to why local were treated differently than the statewide. No, I've not forgone away of the argument that there is a First Amendment claim. If there is a First Amendment burden, that has to be incorporated in the analysis, and that's the whole purpose of the Anderson verdict review. What I've said is if the district court concluded there is no Anderson verdict test, you still fall back on, as Obama for America did. What is the burden? The burden is the ability. . . I'm now talking about under the Anderson verdict test. What's the burden? The burden identified in Timmons, which is the ability to identify on Election Day with the party or the party to identify its. . . That's the lack of information. In other words, you're complaining that you can't put information on the ballot, but it doesn't burden you to get on the ballot. Your Honor, this is a discrimination case. Well, you stay with the discrimination. That's the second thing. That's also an analysis in Anderson and verdict. It recognized that a discriminatory election law is a burden on the First Amendment. It is a burden on associational laws. I understand what you're saying, I think, that fine, fine, there's no constitutional right to a party identifier on a ballot, but if a state regulates party identifiers on the ballot in a discriminatory way, that would be a problem. But what we're worried about is cases where they say, like, Republicans can ballot identify, but Democrats can't, or major parties can, but minor parties and independents can't. But here, every party is treated exactly the same. There's not even a disproportionate impact, at least alleged, on minor parties, small parties. I don't see the discrimination. You know, the test is, it's a two-part analysis, under both Anderson and under traditional equal protection analysis. And that is, is there a pool of similarly situated candidates, all the people on the ballot? It begs the question to say that state and local are different, therefore they're not similarly situated. They're all on the ballot. That distinction has to be justified, that distinction in Illinois State Board and in- Well, they advance some justifications, and I gather you're trying to address them, and I'm not sure I've heard it yet, but your time is out on your, this portion, but you do have a substantial amount of remarks. Yes, I apologize. We'll hear from you some more. Thank you. All right, Mr. Hesslinger. May it please the Court, I'm Joshua Hesslinger, arguing on behalf of the Commonwealth Appellees. The decision below should be affirmed under the Anderson verdict framework. There is no constitutional right to convey a party affiliation message on the ballot or to force the state to do so. Appellants failed to show any harm from the absence of party identifiers, and even assuming there was some non-severe burden, Virginia's interests justify barring party identifiers on the ballot. It's very confusing how appellants talk about the standard of review. Under the case law, it's very clear. Under this Court's Pisano decision, under Supreme Court cases cited there- I think he's basically agreed that it's coming down to a rational basis test. You guys have advanced three reasons, which I'd like to hear again, and responding to his arguments, and that's really what it comes down to, whether you have a rational basis for doing what you did. I would agree, Your Honor, that as the district court, we win, whether you call it Anderson verdict or whether you call it rational basis. The district court looked at both and concluded we would win under both. I certainly agree with that. I think we win at both steps of the Anderson verdict analysis, at step one where you're assessing the burden. They conceded, of course, as they have to with Timmons and Washington State Grange, that there is no absolute right to have a party identifier on the ballot. They go on to make this argument they call a discrimination argument that amounts to once the state allows any party identifiers on the ballot, it has to allow them across the board. That's contrary to what the Supreme Court has said about the nature of the ballot as not a forum for expression by parties or candidates. It's also contrary to Washington State Grange. In Washington State Grange, both the majority and the dissent agree that it would be fine if Washington had a ballot that had no party identifiers at all. The key point where they differed was that that was not what Washington had. Washington had a ballot where candidates were allowed to express party preferences, and the dissent said, well, if you're going to do that, then you're hurting the parties and they need to be able to respond, and the majority disagreed. The majority rejected that same sort of discrimination argument that's being advanced here. Can I just ask you a doctrinal question that I'm having just a little trouble with? Assuming hypothetically all of that is right and the district court agreed with all of that, is the district court right to say that then just forget Anderson-Burdick, we don't do it at all? If there's really no constitutional injury at all, there's nothing to balance, and we're just done here, or should we still kind of run that through the Anderson-Burdick framework? I think it's part, the way we frame it in our briefs, and this is how we think it ought to be, is it's part of the Anderson-Burdick framework. Step one is look at the burden. If there is no burden, you're done, because there's nothing to balance against. If you find some minimal burden in this case, then step one. Mr. McSweeney argues that the burden created is the discrimination on the ballot. In other words, some people get it and others who want to identify themselves don't get it. That's the burden he's arguing. He does argue discrimination. I don't think it can survive Washington State Grange. It also assumes that a party identifier is a benefit. There's no evidence put on in the record by appellants that that's the case, or no expert witnesses to talk about the importance or the benefit of party identifiers and what happens when you don't have them. If you look at other cases similar to this one, like Rosen out in the Sixth Circuit, that was a key point. There was extensive expert witness evidence submitted there to show that there was an actual burden from not having the party identifier. Contrast that with Dart v. Brown out of the Fifth Circuit where there was no evidence. The court said, well, there's no evidence, and we can't, you know, it's not self-evident that you get a significant benefit out of that. And so I think it is significant that there's no evidence here by appellants on that point. And in the reply brief, they say, well, there's a classification on the face of the statute. We don't need evidence. Well, yes, there is a classification, but that's not the question. The question is whether the classification has injured you at all. That's the burden analysis that you're doing at Step 1. And then the third point we make in the briefs that can be considered at Step 1 is the government speech question. And then when you move on to Step 2, to the interests that Your Honor was talking about, again, appellants don't dispute the legitimacy of the interests asserted. They say that twice in the reply brief. What they're arguing is that either the bar on party identifiers for local office candidates doesn't serve those interests at all, or that it's under- or over-inclusive. Well, the Timmons case says expressly at 520 U.S. 365 that because the burdens imposed on rights are not severe, the state need not narrowly tailor the means it chooses to promote those interests. Narrow tailoring is not a feature of whether you call it rational basis or whether you call it the Anderson-Burdick approach, as this Court said in Sarvis. What is required is that the state articulate its interests. That's not a high bar, this Court said in Sarvis. And there must just be some rationality to those interests. And we easily meet that test here. You have the long-recognized interest in reducing partisanship and avoiding the ills of partisanship generally. We discussed that in the brief. There was also evidence in the record below of people who felt that partisanship would be bad and would have negative effects on local government. There was the general counsel over the Virginia Municipal League's declaration. The mayor of Front Royal submitted a declaration. A councilman in Portsmouth submitted a declaration. People may disagree with it, but it's certainly rational for the state to agree with them and to conclude that it wants to avoid promoting partisanship by having partisan affiliation messages on the ballot for local offices. The second interest that we've asserted is promoting impartial governance and public confidence in local government, essentially avoiding some appearance of partiality or favoritism or political justice that might exist. I think, as Your Honors pointed out, there are local offices for which that's particularly significant. It doesn't matter whether they're always termed or thought of as judicial under Virginia law. The cases recognize that there are types of offices for which impartiality is particularly important. Certainly some cases are about judges, and there's special concern for impartiality there. But I would submit that it's also important that you not think of your sheriff, first and foremost, as a Republican or a Democrat or your commissioner of the revenue. And that's what we're saying here. For those essential administrative offices or quasi-judicial offices, that same principle applies. Let me ask you a question that may or may not be relevant. In Virginia, when you look at a ballot that includes local candidates, can you vote straight party? There is no. In some cases, you just, whether you check it once or you click the lever once or whatever it is and it hits all of them, that's not the case in Virginia. There are a lot of amples of ballots in the joint appendix, and there is some variation between them, but what all of them have in common is that you vote each office. Yes, each office is presented separately and you vote for each office. And then, so the only other question on the second interest is, is the statute rationally related to that interest? And it obviously is. What it does is it serves that interest by avoiding portraying candidates as partisan at the moment of voting. And the Ohio Council 8 case out of the Sixth Circuit specifically comments that there may be a benefit in doing that, in divorcing the candidates from their parties at the time of voting and encouraging voters to think beyond the party label to perhaps educate themselves better or to vote based on something other than the party label. And then the third interest that the state has asserted is ensuring the broadest possible pool of citizens who can run for and serve in local office. And the particular focus here, of course, is federal employees and the Hatch Act. I have no quarrel with what opposing counsel said generally about the Hatch Act. The test is whether an office is partisan or nonpartisan. That's sort of a totality of the circumstances analysis under the case law on the Office of Special Counsel Opinions. So it's not that whether there's a label or not on the ballot is dispositive of that question. That's not what we're saying. What we're saying is it serves, it assists in having nonpartisan elections if you don't have a system where you print party identifiers on the ballot for local offices. I'm having trouble understanding what your counterargument is to his Hatch Act argument. Can you remind me one more time? Sure, Your Honor. His argument, I think, is that the presence or absence of party identifiers on the ballot just doesn't matter at all because there are other points in the process at which there will either be partisanship or not. And it is true that if someone was nominated by a party, I think, under the applicable Hatch Act interpretations, that nomination would qualify that election for that office as partisan. But it's not a formality issue under the Hatch Act. It's not strictly about offices. It's not strictly about nominations by parties. It's not strictly about the labels that a state chooses to put on an office as partisan or nonpartisan. You look at everything. Was partisanship enough of a flavor in this election to conclude that someone was elected as a partisan, as a representative of a party? What if the local county Republican Party, not the state party, but this was an association of local Republicans, got together in caucus, and we say Jimmy Smith ought to be the sheriff, and they promote Jimmy Smith as the candidate for the local Republicans. Would that put it under the Hatch Act? It would certainly be analyzed under the Hatch Act. I don't think that the independent actions of the party alone would likely be enough under the Hatch Act. Is that a local party? Does that qualify as a party? Does it have to be a statewide party? I don't think it has to be a statewide party. I think it can be any party organization that's recognized under the law. There's one case I'm thinking of, I believe it's out of the Federal Circuit, a McEntee case where there was that type of activity. More than that, though, the candidate actually referred to himself as a Republican and sent mailers to people referring to himself as the Republican candidate. So I'm not sure that a local party's action alone would convert it into a partisan election, but the Hatch Act takes the totality of the circumstances involved. So your argument is that if it turns out that there are some local parties that do nominate him, there may be a Hatch Act problem, but that generally by not having the identifiers, it's a more generalized selection process, getting on the ballot. That's right. It's not determinative the way the state has set it up, but the state has done what it can. The state can't bar parties from engaging in their own speech. It's not barring parties or candidates from doing anything in particular. How are the people, let's say for sheriff and clerk of court and dog catcher, whatever they are, how do they get on the ballot locally in Virginia? They submit a petition with a certain number of signatures. It varies by office how many signatures that you need, and they submit that. That's the nonpartisan qualification process that Virginia has, is submitting a petition. What if my county Republican Party designates somebody they would like to be on the ballot? Would the state put that person on the ballot? There are a few different party processes by which a recognized party can get someone on the ballot. Major, quote, unquote, major parties, or as Virginia law refers to them, just political parties are able to hold primary elections. To be in a primary election, you submit a petition with the exact same number of signatures. But if a party were to choose a different process like a convention or something, then they might not have that same petition piece of the process. If it's not a- I organize a little group. We're holders of revolutionary designed rifles, and there are 75 of us, and we have a meeting in the armory, and we decide that John Smith ought to be our candidate for sheriff. And they give that to the state election board and say, put him on. What happens? Unless that group were recognized under Virginia law, that alone would not be enough. That's what I was getting at originally, and I don't think local repartees are recognized under Virginia law either because the definition is so broad. You have to win a certain percentage in certain elections and two elections in a row and that type of thing, don't you? There are two different tiers for political parties and then for recognized political parties, and the way that recognized, the lower tier, gets their people on the ballot is through a petition. The candidate submits a petition with signatures, and then there's also- The fact that it's a party doesn't contribute much then in that circumstance. No. My situation is where the party, because the party nominated, can avoid the petition process. Then it would have to be a political party, the major tier, under Virginia law for them to be able to do that. I don't know whether the- So the Powhatan Republican Party here would not be considered a political party under Virginia law. Is that what you're saying? Not by itself. It would be a part of the- It would have to do the petition process. It would be a part of the Republican Party. Under Virginia law, there's different units to the Republican Party and under- What if they self-organized? They didn't have anything to do. They said, I don't like the organization in Richmond. I don't like the hierarchy. The guy who's chairman of the party, he's a jerk. We have a bunch of Republicans down there, and we have our own interests, and we get together in the armory, and they say we are now the Powhatan Republican Party. They haven't won any big elections. They don't qualify. They would still have to do the petition process, wouldn't they? That's right. If they were not recognized under Virginia law, their candidate would get on the ballot by petition. So whatever one may think about the values of partisanship or about how much sense it makes to have more or less partisanship, it is clearly rational for the state to assert the interests that it has asserted here. The statute relates to those interests and rationally serves them, and the result under Anderson Burdick, the second step, if you get there, is an easy one. I do want to touch briefly on the question of separate equal protection analysis. As I mentioned, I think under the Pisano case of this court and others, it's clear that it's a unified, it's a one Anderson Burdick framework. I've read the Sixth Circuit Obama for America v. Fusted case that my opposing counsel has cited. I don't read it the way he does. There the state was actually arguing for a rational basis instead of Anderson Burdick, and the court rejected that argument. The court said, no, we're going to apply Anderson Burdick because the Supreme Court imported equal protection into the Anderson Burdick analysis, thus creating a single standard is the way they put it in that case. Is that the position you're taking, that there is a single standard? Yes. Or do they have a separate equal protection claim? No. Our position is that it's Anderson Burdick, that they have asserted, they've chosen to frame them separately as first and 14th in their pleading, but you could easily frame them together in a pleading, and it's not those sorts of pleading decisions that determine how the court analyzes it, the Anderson Burdick. So in the Anderson Burdick, the burden arguably would be some form of discrimination, and you'd have to analyze that in what manner? Would you have to then assess the burden against the interest of the state like Anderson Burdick did? There would be two steps. First, assess, determine what is the burden, assess whether the burden is severe or not. Here, of course, they concede that it's not a severe burden. And then if you find there's a burden, and we don't think there's any burden at all, but if you find there's a burden, then you would move on to the second step of the analysis and assess the state interests and weigh whether those are sufficiently weighty as to justify the burden. So rationality, under your proposal, rationality doesn't come into play at all? It might come into play if the state were to assert some completely ridiculous off-the-wall interest. You know, there might be some consideration of whether the state was rational in that case. Well, then it would be insufficient. It would be lightweight, flyweight. Yes, I think that would be a way to look at it. Flyweight because it just doesn't overcome a burden. I think that would be another way to look at it, sure. And then, of course, this is a facial challenge. Facial challenges are disfavored. And there's good reason not to apply the same rule across the board. They haven't even attempted to justify the rule, really, other than for the offices that these particular appellants are seeking. So under the step one, where you find no burden, or under the second step, we think we win under both steps of the Anderson verdict analysis. And because Virginia's bar on party identifiers on the ballot for local office candidates is at most a minimal burden that is outweighed by the state interests, the decision below should be affirmed under Anderson verdict. Thank you, Your Honor. Mr. McSweeney. Your Honor, the state of Virginia has not made a determination. In fact, it has made a determination that all of these offices, all of these local offices, can be partisan. It's made that determination. That's why it allows parties to nominate people for clerk, sheriff, and whatnot. He agrees with you that there could be, as a matter of fact, they could do it at the state convention and set up some structure for that purpose. His point is that they want to encourage a nonpartisan arrangement and broaden the scope of participation by not having the partisanship involved, letting people petition on, in which case it would not serve the interest to label those people. But it doesn't mean it's a regulatory function of the way society functions. Your Honor, there's no connection between what you're asserting and the prohibition on having a certain party-nominated candidates not have that label on the ballot. A certain party-nominated candidate? Yeah. Who nominates a sheriff? It has to be a party recognized under Virginia law. And the party under Virginia law has to have a certain percentage? That's correct. Right. That's correct. We're not asking. So how does that apply in this case? All of these plaintiffs were nominated by a recognized political party. Which party? The Republican Party of Virginia. They were at a state convention? No, at a local mass meeting, which is the procedure set out in the state party plan, which is required under state law for political parties that are recognized. So if I understand what you're saying, then the Republican Party of Virginia has constituted itself in a fashion where they then permit a county or a city or a village to hold a meeting of Republicans? That's correct. And they will be bound by whatever that little local group does? That is correct. And the person then becomes the nominee of the state, of the Republican Party? Of Virginia. That's correct. What we're down to is whether the interests asserted by the state are served by denying voters the information about these nominations on the ballot. It is a pool of candidates, both state, federal, and local, which are allowed to be nominated by the parties. Clearly, you still have a partisan party-nominated candidate who is successful, whose performance in office will still be partisan, whether his name is labeled as a Republican candidate or not on the ballot. If the party's label is not there, then their interest will be served because the voter basically is looking at a name and making a decision based on the name and maybe prior campaign literature, but at least when they go to cast a vote, it deters the partisan aspect. I would say a state could reasonably believe that it would serve an important symbolic function. When you're voting for sheriff, at the moment you vote for sheriff, you're not voting for a Republican or a Democrat because we actually hope that their behavior in office will not be partisan, that they will respond equally when Republicans or Democrats need the sheriff to come, and that that is what you're conveying by keeping those labels off the ballot. I'm not saying that's right or wrong, but it doesn't seem irrational. It is in this sense. The Commonwealth concedes that the parties are still free to electioneer and to betray themselves at the polls. In the way it organizes its ballot, the ballot is telling the voter, you may know this person as a Republican, you may know this person as a Democrat, but at the moment you're voting, you're not voting for a Republican or a Democrat. You're voting for the person. That's an argument that defies what the Supreme Court has said is the value of political parties and the accountability role they play. The Supreme Court has very carefully indicated that the ballot doesn't serve the associational role, the First Amendment role. The ballot is there to conduct the election, and that all of the points you're making are legitimate as part of campaigning, advertising, and so forth, and bringing the information to the public, which, of course, is fully protected at the heart of the First Amendment. Now, the court has said, and particularly in the tasking quotation that I've included in the brief, that the fact of a party label is a helpful cue to voters who are looking for someone who is consistent with their policy preferences and their value preferences. It serves a valuable function, and the voters are denied that valuable function, and the court has repeatedly said party labels serves a useful purpose. It's a valuable— Can you give me an example, using Commonwealth attorney as a basis, where there would be a partisan difference in views for Commonwealth attorney? Give me an example. I'm not familiar with how there would be a partisan view of law enforcement. Well, there's a division in local law enforcement, for example, between those sheriffs who want more rigorous gun control and those who oppose it, who are strong Second Amendment advocates. That's very often the issue in a sheriff's race. It's very— And a prosecutor. And a prosecutor as well. I mean, he's not arresting anybody. No. He's saying that it would be—the prosecutor would make a decision as to whether or not to prosecute somebody who had been arrested for a crime involving guns because the prosecutor was pro-gun control or anti— For example, the current debate about how law enforcement is to be treated by the law. Okay. It becomes— Can you give me an example? Yeah. Because I just don't understand. A prosecutor's relationship with law enforcement is critical, and we've had prosecutors' races all over the country. In fact, one of the chief contributors to those races was George Soros, who wanted to change the focus of local prosecutors. It becomes a highly charged political debate about what prosecutors' relationship to law enforcement will be. That's a legitimate partisan issue. No, no, but why can't Virginia rationally decide it would prefer that that not be a partisan issue? It has made that— It would prefer that sheriffs' elections not turn on who George Soros is funding. But it has not—in fact, it has made the determination that these aren't partisan offices. It allows parties to nominate in those cases. I'm just saying it could do more, that if it had concerns about partisanship, it could go further, which I think would actually bring it into probably more difficult First Amendment territory than it's in with this more modest regulation. But under Anderson Burdick, under rational basis review, they don't have to do everything they could do. They're allowed to be under-inclusive in advancing their goals. But the point is they have allowed these offices to be partisan. And you can't assume that the Commonwealth has decided these should be non-partisan offices. Responding to Judge Harris's question, her question is not that they've allowed or trying to regulate the identification of somebody by label. What they have said basically is the ballot is just a ballot, and we don't want that information because we want to have at least that little contribution to non-partisanship, that is, to not have partisan labels at the local, I mean, clerk of court and sheriff and those people that we're talking about. Anyway, I think we understand. I'd like to respond to that. I'd like to respond to that briefly. The point is it has allowed the party label for some and not for others. The distinction between statewide officials, for example, and local officials has to be justified in the context of these three interests. And I've demonstrated that. Well, we're going around in circles because that comes back to the fact that at the local level, these local jobs involving sheriff and clerk of the court and that type of person, they've made a decision that the partisanship is the communities are better served by having the vote based on the name of the person and not necessarily the label, even though they're not trying to prohibit the label. I mean, the label is created in the campaign. But anyway, we've gone over our time, and I think we fully. Let me ask you just one last question. Do you agree with the state's analysis of the relationship of equal protection to the Anderson verdict? In other words, your argument has to be the burden is the discrimination. And plus, we've also in our declaration of Mr. Marcellus. I know, but is there a separate equal protection claim? No. Two ways to look at it. We've got a separate claim. But even if it is incorporated in the Anderson analysis. I understand that part. You incorporate. Let's say there is no equal protection claim that would lie in this for this type of circumstance. We have to evaluate it on Anderson. Well, I didn't recall that Anderson or any other case that said the equal protection clause has been modified or repealed. No, no, it hasn't been. You have to start identifying classes and suspect classes and then how they treat the different classes and whether it's rationally justified. Okay. Thank you.
judges: Paul V. Niemeyer, William B. Traxler, Jr., Pamela A. Harris